USDC SDNY
DOCUMENT ELECTRONICALLY
FILED
DOC#: _____
DATE FILED: __3 - 12 -18__

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA *ex rel.* SONNY
KAPLAN and STATE OF NEW YORK *ex rel.*
SONNY KAPLAN,

        Plaintiffs,

        vs.

NORTHERN METROPOLITAN, INC., CHEVRE
LIADY NUSACH HOARY, NORTHERN
RIVERVIEW HEALTH CARE CENTER, INC.,
NORTHERN SERVICES GROUP, INC., and
NORTHERN METROPOLITAN FOUNDATION
FOR HEALTHCARE, INC.,

        Defendants.

16 Civ. 2180 (ALC)

### NEW YORK STATE STIPULATION AND ORDER OF SETTLEMENT AND DISMISSAL

This Stipulation and Order of Settlement and Dismissal (the "Stipulation") is entered into by and among the State of New York, acting through the New York State Office of the Attorney General, Medicaid Fraud Control Unit ("MFCU") (collectively, the "State"), Relator Sonny Kaplan ("Relator"); and Defendants Northern Metropolitan, Inc. ("NMET') Northern Riverview Health Care Center, Inc. ("Northern"), Northern Services Group, Inc. ("NSG", and together with Northern and NMET, the "Defendants", and together with the State and Relator, the "Parties"), by their authorized representatives;

### RECITALS

WHEREAS, NMET is a corporation that owns a 120 bed skilled nursing facility located at 225 Maple Ave, Monsey, New York; Northern is the operator of Northern Riverview Health Care Center, Inc., a 182 bed skilled nursing facility located at 87 US-9W, in Haverstraw, New

York; and NSG is a corporate affiliate of Northern that participates in operating NMET and

NRV; WHEREAS, Defendant Chevre Liady Nusach Hoary is a New York Religious

Corporation that is a member of Northern Metropolitan Foundation for Healthcare ("NMFH"),

which is also a corporate affiliate of Northern;

WHEREAS, Chevre Liady Nusach Hoary and NMFH (together the "Non-Settling

Defendants"), which are named-defendants in the above-captioned action, are not signatories to

this Stipulation and are not included within the definition of Defendants in this Stipulation;

WHEREAS, on or about March 24, 2016, the Relator filed a complaint (the "Relator

Complaint"), captioned *United States and State of New York, ex rel. Sonny Kaplan v. Northern

Metropolitan, Inc., et al.*, C.A. No. 16 Civ. 2180 (S.D.N.Y.) (ALC) (the "Civil Action"), under

the *qui tam* provisions of the False Claims Act ("FCA"),  U.S.C. § 3729 *et seq.*, and the New

York State False Claims Act ("NY FCA"), State Fin. Law § 189 *et seq.*, against Defendants

alleging, *inter alia*, that Defendants  knowingly retained funds erroneously paid by the New

York State Medical Assistance Program ("Medicaid" or the "Medicaid Program") in violation of

the "reverse false claims" provisions of the federal and state FCAs. 31 U.S.C. § 3729(a) (1) (G);

WHEREAS, contemporaneously with the filing of this Stipulation, the State is filing a

Notice of Election to Intervene in the Civil Action;

WHEREAS, the State alleges that between January 1, 1998 and December 31, 2017 (the

"Covered Period"): Defendants received certain reimbursements from the Medicaid Program (the

"Overpayments") starting in 1998, due to an inadvertently erroneous computation by the New

York State Department of Health ("DOH"), administrator of the Medicaid Program, of

depreciation compensable under Medicaid; Defendants knew that DOH's calculation of the

depreciation was mistaken, and that they were not entitled to the Overpayments but NSG failed to

take any action to return the Overpayments to DOH or alert any governmental personnel of the error (the "Covered Conduct");

WHEREAS, as a result of the foregoing Covered Conduct, the State alleges that Defendants knowingly and improperly avoided an obligation to pay money to the State in violation of the NY FCA, State Fin. Law §§ 189 *et seq.*, Social Services Law § 145-b, Executive Law § 63(12), Executive Law § 63-c and the common law;

WHEREAS, the United States contemporaneously herewith is entering into a separate stipulation of settlement with Defendants to resolve the United States' claims against Defendants;

WHEREAS, the total amount to be paid by Defendants to settle the claims of the United States and the State for the Covered Conduct is FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) (the "Settlement Amount"); and,

WHEREAS, to avoid the delay, expense, inconvenience, and uncertainty of protracted litigation of the State's claims for the Covered Conduct, the Parties hereby reach a full and final settlement pursuant to the Terms and Conditions set forth below.

NOW THEREFORE, upon the Parties' agreement, IT IS HEREBY ORDERED that:

## TERMS AND CONDITIONS

1.      The State hereby represents that it has the authority to enter into this Stipulation and effectuate a final settlement of the State's claims for the Covered Conduct on behalf of itself and all counties of the State participating in Medicaid payments to Defendants. It is understood that Defendants are entering into this Stipulation in reliance upon the foregoing representations of the State.

2.      The Parties consent to this Court's exercise of subject matter jurisdiction over this action and personal jurisdiction over each of them with respect to this action.

3.      Defendants admit, acknowledge and accept responsibility for the following conduct:

a.      In 1992, NMET was appointed by DOH to be the receiver of Riverside Nursing Home ("Riverside"), located at 87 South Route 9W, Haverstraw, New York 10927.

b.      In 1995, DOH authorized NMET, the receiver of Riverside, to become its operator. NMET thus became the new owner of the facility and renamed it Northern Riverview Health Care Center, Inc. ("Northern").

c.      DOH's Medicaid regulations permit the owner of a residential health care facility to seek reimbursement over time from the Medicaid program for certain capital costs. However, when ownership of a residential healthcare facility changes, the new owner is only entitled to seek reimbursement from the Medicaid program for any depreciation costs recorded on its books as an asset at the time the facility is transferred to the new owner. This figure is termed the "Medicaid Allowable Transfer Price," or "MATP." The MATP is incorporated into the facility's Medicaid-reimbursable costs, and thus is factored into its Medicaid reimbursement rate.

d.      For the transfer of Riverside to NMET, DOH initially calculated the MATP in 1996 as $871,529. This was the correct figure, and it was used in the calculation of the Medicaid reimbursement rate paid in the years 1996 through 1999.

e.      For the years 1996 and 1997, Northern was correctly reimbursed only for the MATP.

f.      However, starting in the year 1998, and continuing through 2017, DOH erroneously included an additional capital cost when it calculated Northern's Medicaid reimbursement rate. This erroneous capital cost was $2,183,679.

4

g.      Starting in 1998, and continuing through 2017, the erroneous inclusion of the additional capital cost in the calculations of Northern's Medicaid reimbursement rate resulted in inflating its reimbursement rate. Northern thus received hundreds of thousands of dollars in Medicaid payments to which it was not entitled.

h.      Northern knew that DOH had erroneously calculated Northern's reimbursable capital costs. Northern also knew that, due to this erroneous calculation, Northern had received and continued to receive Medicaid payments to which it was not entitled. Northern nonetheless failed to notify either the state or federal government and made no effort to return the Overpayments. Furthermore, at a minimum, NMET and NSG did not take steps to uncover the overpayments or take any corrective action.

4.      The Defendants shall pay FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) (the "Settlement Amount") to settle the claims of the United States and the State related to the Covered Conduct as follows:.

a.      Defendants shall pay to the State TWO HUNDRED EIGHTY EIGHT THOUSAND, THREE HUNDRED THIRTEEN DOLLARS AND EIGHTY-TWO CENTS ($288,313.82) (the "State Settlement Amount"). Payment of the State Settlement Amount shall be made no later than twenty-one (21) days after the Effective Date (defined below in Paragraph 32), The State Settlement Amount shall be paid by certified check delivered to the Office of the Attorney General, Medicaid Fraud Control Unit, 120 Broadway, New York, NY, and made payable to the "MFCU Restitution Fund."

b. Defendants shall pay to the United States  TWO HUNDRED ELEVEN THOUSAND, SIX HUNDRED EIGHTY SIX DOLLARS AND EIGHTEEN CENTS ($ 211,686.18) (the

"United States Settlement Amount"). The United States Settlement Amount will be paid pursuant to a separate stipulation between the United States and Defendants.

5.      Northern agrees not to retain any past, current or future Medicaid reimbursement amounts which constitute an overpayment, as that term is defined by 42 C.F.R. § 433.304 and NY FCA, State Fin. Law § 188(4), including without limitation overpayments arising from improperly calculated depreciation. Within fifteen (15) days of the entry of this Stipulation, Northern will establish written policies and procedures regarding identifying, reporting, and refunding overpayments (collectively, the "Overpayment Policy"). Northern will ensure that all officers or employees who have any executive, financial, or billing responsibilities are provided with a copy of the Overpayment Policy within 30 days of the Effective Date, and thereafter at least once annually. Northern also shall ensure that all employees who receive the Overpayment Policy certify in writing, within 30 days of receipt, that they understand and are in compliance with the Overpayment Policy. Copies of the Overpayment Policy and the annual certification of compliance with the Overpayment Policy shall be provided to the Attorney General, within thirty days of adoption and certification thereof.

### RELEASES

6.      Subject to the exceptions set forth in Paragraphs 8, and conditioned upon Defendants' full compliance with the terms of this Stipulation including full payment of the State Settlement Amount, the State releases Defendants, together with their current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; and the corporate successors and assigns of any of them ("Defendants' Affiliates") (collectively, the "Defendants' Releasees"), from any civil monetary cause of action that the State has for the Covered Conduct under the NY FCA, State Fin. Law §§ 188 *et seq*., Social Services Law § 145-

b, Executive Law § 63(12), Executive Law § 63-c, or the common law theories of payment by mistake, money had and received, unjust enrichment and fraud.

7.       Defendants and Defendants' Affiliates, fully and finally release the State, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the State, its agencies, officers, agents, employees, and servants, related to the Covered Conduct, the State's investigation and prosecution thereof and this Agreement.

8.       Notwithstanding the releases given in Paragraph 6 of this Stipulation, or any other term of this Stipulation, the State specifically does not release any person or entity from any of the following liabilities:

      a.       Any civil, criminal or administrative liability arising under state revenue codes;

      b.       Any criminal liability;

      c.       Any administrative liability, including mandatory or permissive exclusion from the State's Medicaid Program;

      d.       Any civil or administrative liability that any person or entity, including any of the Defendants' Releasees, has or may have to the State or to individual consumers or state program payors under any statute, regulation or rule not expressly covered by the release in Paragraph 6 above, including but not limited to, any and all claims involving unfair and/or deceptive acts and practices and/or violations of consumer protection laws;

      e.   Any liability to the State (or its agencies) for any conduct other than the Covered Conduct;

7

    f.   Any liability for personal injury, patient abuse or neglect arising from the Covered Conduct; and

    g.   Any liability based upon obligations created by this Stipulation.

    h.   The liability of any individuals.

9.      Conditioned upon full payment of the State Settlement Amount, the Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, fully and finally and irrevocably releases Defendants and their parents and subsidiaries, predecessors, current and former parents, current and former owners, shareholders, members, agents, employees, directors, trustees, officers, affiliates, divisions, units, direct and indirect subsidiaries, successors, transferees and assigns, from any claims the Relator has asserted, could have asserted, or may assert in the future  arising out of the Covered Conduct, including, without limitation, claims under State Fin. Law § 188 *et seq.,* and (a) by reason of any cause, matter, thing, fact, circumstance, event or agreement relating to or arising from  the Relator's Complaint under the New York State False Claims Act, State Fin. Law §§ 188 *et seq.,* Social Services Law § 145-b, or the common law theories of payment by mistake, negligence, unjust enrichment, and fraud; and (b) from any claim that Relator has asserted or could have asserted, or may assert in the future for any acts or omissions that predated this Stipulation.

10.    In consideration of the obligations of the Relator set forth in this Stipulation, Defendants and all of its predecessors, successors and members together with their current and former parents, subsidiaries, successors, officers, directors, trustees, servants, employees, Defendants' Affiliates and assigns, fully, finally and irrevocably release the Relator and his heirs, executors, administrators, estates, successors, attorneys, agents and assigns, from all claims, causes

or rights of action, demands, liabilities, or penalties of any kind or nature whatsoever, in law or in equity, that they had, have, or may have, against the Relator arising out of the Covered Conduct and the Relator's investigation and prosecution thereof.

11.    Subject to the exceptions in Paragraph 8, and in consideration of the obligations of Defendants in this Stipulation, conditioned upon Defendants timely full payment of the State Settlement Amount, the State shall file a Stipulation of Dismissal with prejudice and, subject to the Relator's right to seek to recover attorney's fees, costs and expenses from Defendants, the Relator shall dismiss with prejudice the Relator's Complaint as to Defendants, the non-settling Defendants and their owners, agents and employees; provided, however, that the Court shall retain jurisdiction over this Stipulation and each Party to the extent the obligations herein remain unsatisfied by that Party.

## COOPERATION WITH ATTORNEY GENERAL

12.    Defendants agree to cooperate fully and truthfully with the State's investigation of individuals not released in this Stipulation.  Upon reasonable notice, Defendants shall encourage, and agree not to impair, the cooperation of their directors, officers, and employees, and shall use their best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of all such individuals.  Defendants further agrees to furnish to the State, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in their possession, custody, or control concerning the Covered Conduct that they have undertaken, or that has been performed by another on their behalf.

13.    Defendants waives and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct, based in whole or

in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Stipulation bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Stipulation constitutes an agreement by the State concerning the characterization of the State Settlement Amount for purposes of New York State Tax Law.

**DEFAULT**

14.     Defendants shall be in default of this Stipulation if Defendants fail to make the required payment set forth in Paragraph 4 above on or before the due date for such payment, or if they fail to comply materially with any other term of this Stipulation that applies to them ("Default"). The State shall provide written notice to Defendants of any Default in the manner set forth in Paragraph 31 below. Defendants shall then have an opportunity to cure the Default within ten (10) calendar days from the date of delivery of the notice of Default.  In the event that a Default is not fully cured within ten (10) calendar days of the delivery of the notice of Default ("Uncured Default"), interest shall accrue at the rate of 12% per annum compounded daily on the remaining unpaid principal balance of the Settlement Amount, beginning ten (10) calendar days after mailing of the notice of Default. In the event of an Uncured Default, Defendants shall agree to the entry of a consent judgment in favor of the State against Defendants in the amount of the Settlement Amount as attached hereto as Exhibit A. The State may also, at its option, (a) rescind this Stipulation and reinstate the claims asserted against Defendants in the Relator Complaint; (b) seek specific performance of this Stipulation; (c) offset the remaining unpaid balance of the Settlement Amount from any amounts due and owing Defendants by any department, agency, or agent of the State; or (d) exercise any other rights granted by law, or under the terms of this Stipulation, or

10

recognizable at common law or in equity. Defendants shall not contest any offset imposed or any collection undertaken by the State pursuant to this Paragraph, administratively or in any Federal or State court. In addition, Defendants shall pay the State all reasonable costs of collection and enforcement under this Paragraph, including attorneys' fees and expenses. In the event that the State opts to rescind this Stipulation pursuant to this Paragraph, Defendants shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that relate to the Covered Conduct.

## UNALLOWABLE COSTS

15.     Defendants agree to the following:

a.      Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendants or their present or former officers, directors, trustees, employees, shareholders, and agents in connection with:

i.      the matters covered by this Stipulation or any stipulation with the United States related to the Covered Conduct;

ii.     the State's audit(s) and civil and any criminal investigation(s) of the matters covered by this Stipulation or any stipulation with the United States related to the Covered Conduct;

iii.    Defendants' investigation, defense, and corrective actions undertaken in response to the State's audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Stipulation (including

attorney's fees) or any stipulation with the United States related to the Covered Conduct;

iv.    the negotiation and performance of this Stipulation or any stipulation with the United States related to the Covered Conduct; and

v.    the payments Defendants make relating to this Stipulation or any stipulation with the United States related to the Covered Conduct including costs and attorney's fees,

are unallowable costs for government contracting purposes and under the Medicaid Program (hereinafter referred to as "Unallowable Costs").

b.    <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for in non-reimbursable cost centers by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any Consolidated Fiscal Report ("CFR"), cost report, cost statement, information statement, or payment request submitted by Defendants or any of its member corporations or affiliates to the Medicaid Programs.

c.    <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Defendants further agrees that within ninety (90) days of the Effective Date of this Stipulation it shall identify to applicable Medicaid fiscal agents, any Unallowable Costs (as defined in Paragraph 15(a)) included in payments previously sought from any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Defendants or any member corporations or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment

12

requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Defendants agrees that the State, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, appeals, or requests for payment. Any payments due after the adjustments have been made shall be paid to the State. The State reserves its rights to disagree with any calculations submitted by Defendants or any member corporations or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Defendants' or any member corporations' or affiliates' CFRs, cost reports, cost statements, or information reports, appeals or other payment requests.

   d. Nothing in this Stipulation shall constitute a waiver of the rights of the State to audit, examine, or re-examine the books and records of Defendants to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

## BANKRUPTCY PROVISIONS

  16. Defendants represent and warrant that they have reviewed their financial situation, that no Defendants is currently insolvent as such term is defined in 11 U.S.C. §§547 (b)(3) and 548 (A) (1)B) (ii) (I) that each Defendants reasonably believes that it shall remain solvent following payment to the State of the State Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Stipulation, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Defendants, within the meaning of 11 U.S.C. § 547(c) (1); and (b) have concluded that these mutual promises, covenants, and obligations do in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set

forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Defendants were or became indebted to on or after the date of this Stipulation, within the meaning of 11 U.S.C. § 548(a) (1).

17.    If within 91 days of the Effective Date of this Stipulation or any payment made under this Stipulation, any Defendant commences any case, action, or other proceeding under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors or a third party commences any case, action, or other proceeding under any law related to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking an order for relief of such Defendants debts, or seeking to adjudicate such Defendants as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for such Defendants or for all or part of such Defendants' assets, Defendants agree as follows:

a.    Defendants' obligations under this Stipulation may not be avoided pursuant to 11 U.S.C. § 547, and no Defendants shall argue or otherwise take the position in any such case, action, or proceeding that (i) any Defendants' obligations under this Stipulation may be avoided under 11 U.S.C. § 547; (ii) any Defendants was insolvent at the time this Stipulation was entered into; or (iii) the mutual promises, covenants, and obligations set forth in this Stipulation do not constitute a contemporaneous exchange for new value given to any Defendants.

b.    If any of Defendants' obligations under this Stipulation are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the State at its option, may rescind the release in this Stipulation and bring any civil and/or administrative claim, action, or proceeding against Defendants for the claims that would otherwise be covered by the release

14

in Paragraph 6 above. Defendants agree that (i) any such claim, action, or proceeding brought by the State would not be subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the case, action, or proceeding described in the first sentence of this Paragraph, and Defendants shall not argue or otherwise contend that the State's claim, action, or proceeding is subject to an automatic stay; (ii) Defendants shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any claim, action, or proceeding that is brought by the State within 60 calendar days of written notification to Defendants that the release has been rescinded pursuant to this Paragraph, except to the extent such defenses were available on March 24, 2016; and (iii) the State has a valid claim against Defendants in the amount of the State Settlement Amount and the State may pursue its claim in the case, action, or proceeding described in the first sentence of this Paragraph, as well as in any other case, action, or proceeding.

c.     Defendants acknowledge that the agreements in this Paragraph are provided in exchange for valuable consideration provided in this Stipulation.

## **MISCELLANEOUS PROVISIONS**

18.    Except as expressly provided to the contrary in this Stipulation, this Stipulation is intended for the benefit of the Parties only.  The Parties do not release any claims against any other person or entity.

19.    Defendants agree to waive and shall not seek payment for any of the health care billings covered by this Stipulation from any individual health care beneficiaries or their parents,

sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

20. Except as provided in Paragraph 11, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Stipulation.

21. Each Party and signatory to this Stipulation represents that it freely and voluntarily enters into this Stipulation without any degree of duress or compulsion.

22. Any failure by the State to insist upon the strict performance of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof, and the State, notwithstanding that failure, shall have the right thereafter to insist upon strict performance of any and all of the provisions of this Stipulation.

23. This Stipulation is governed by the laws of the State of New York.  The exclusive jurisdiction and venue for any dispute relating to this Stipulation is the United States District Court for the Southern District of New York.

24. For purposes of construing this Stipulation, this Stipulation shall be deemed to have been drafted by all Parties to this Stipulation and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

25. This Stipulation constitutes the complete agreement between the Parties with respect to the subject matter hereof.  This Stipulation may not be amended except by written consent of the Parties.

26. The undersigned represent and warrant that they are fully authorized to execute this Stipulation on behalf of the persons and entities indicated below.

27.     This Stipulation may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Stipulation.   Signatures delivered by electronic mail as ".pdf" attachments to emails shall constitute acceptable, binding signatures for purposes of this Stipulation.

1.     Defendants and their affiliates, officers, directors, agents, trustees, or employees agree not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any finding in the Agreement or creating the impression that this Agreement is without factual basis.   Nothing in this paragraph affects Defendants': (a) testimonial obligations or (b) right to take legal or factual position in defense of litigation or other legal proceedings to which the Attorney General.

2.     This Stipulation is binding on Defendants' successors, transferees, heirs, executors, administrators, estates and assigns.

3.     This Stipulation is binding on Relator's successors, transferees, heirs, executors, administrators, estates, and assigns.

4.     Any notices pursuant to this Stipulation shall be in writing and shall, unless expressly provided otherwise herein, be given by hand delivery, express courier and/or email followed by postage prepaid first class mail, and addressed as follows:

TO THE STATE:

Sally G. Blinken

17

Special Assistant Attorney General, Medicaid Fraud Control Unit
New York State Office of the Attorney General
120 Broadway, 13th Floor
New York, NY 10271
Telephone:  (212) 417-5263
Email: Sally.Blinken@ag.ny.gov


TO DEFENDANTS:

Peter Millock, Esq.
Nixon Peabody, LLP
677 Broadway, 10th floor
Albany, NY. 12207
518-427-2651
pmillock@nixonpeabody.com

TO RELATOR:

Philip R. Michael, Esq.
Michael Law Group
326 West 246th Street
Bronx, New York 10471
917-689-1734
Phil.Michael.law.group @gmail.com


and

Mark H. Schwartz, Esq.
Law Office of Mark H. Schwartz
144 East 44th Street, Suite 702
New York, N.Y. 10017
212-389-7819
markschwartz@mhschwartz.com

5.      The "Effective Date" of this Stipulation is the date upon which it is entered by the

Court ("Effective Date").

Dated: New York, New York
        March _____, 2018

                                        ERIC T. SCHNEIDERMAN
                                        Attorney General of the State of New York


                                        By:_____
                                        Sally G. Blinken
                                        Special Assistant Attorney General
                                        Medicaid Fraud Control Unit
                                        Civil Enforcement Division
                                        120 Broadway, 13th Floor
                                        New York, NY 10271
                                        (212) 417-5237
                                        Sally.Blinken@ag.ny.gov


Dated: New York, NY
March _____, 2018

                                        By:_____

                                        Peter Millock, Esq.
                                        Nixon Peabody, LLP
                                        677 Broadway, 10th floor
                                        Albany, NY. 12207
                                        518-427-2651
                                        pmillock@nixonpeabody.com

                                        *Attorneys for Defendant Northern Metropolitan,*
                                        *Inc. Northern Riverview Health Care Center, Inc*
                                        *and Northern Services Group, Inc.*

5.     The "Effective Date" of this Stipulation is the date upon which it is entered by the

Court ("Effective Date").

Dated: New York, New York
       March _____, 2018

                                        ERIC T. SCHNEIDERMAN
                                        Attorney General of the State of New York


                                        By: _____
                                        Sally G. Blinken
                                        Special Assistant Attorney General
                                        Medicaid Fraud Control Unit
                                        Civil Enforcement Division
                                        120 Broadway, 13th Floor
                                        New York, NY 10271
                                        (212) 417-5237
                                        Sally.Blinken@ag.ny.gov

Dated: New York, NY
       March _6_, 2018

                                        By: _____

                                        Peter Millock, Esq.
                                        Nixon Peabody, LLP
                                        677 Broadway, 10th floor
                                        Albany, NY. 12207
                                        518-427-2651
                                        pmillock@nixonpeabody.com

                                        *Attorneys for Defendant Northern Metropolitan,*
                                        *Inc. Northern Riverview Health Care Center, Inc*
                                        *and Northern Services Group, Inc.*

19

5.   The "Effective Date" of this Stipulation is the date upon which it is entered by the Court ("Effective Date").

Dated: New York, New York
      March _____, 2018

                             ERIC T. SCHNEIDERMAN
                             Attorney General of the State of New York


                             By: _____
                             Sally G. Blinken
                             Special Assistant Attorney General
                             Medicaid Fraud Control Unit
                             Civil Enforcement Division
                             120 Broadway, 13th Floor
                             New York, NY 10271
                             (212) 417-5237
                             Sally.Blinken@ag.ny.gov


Dated:   New York, NY
        March ___, 2018             By: _____
                             Relator   Sonny Kaplan


                             By: _____
                             Philip R. Michael, Esq.
                             Michael Law Group
                             326 West 246th Street
                             Bronx, New York 10471
                             917-689-1734
                             Phil.Michael.law.group @gmail.com

                             and

                             By: _____
                             Mark H. Schwartz, Esq.
                             Law Office of Mark H. Schwartz
                             144 East 44th Street, Suite 702
                             New York, N.Y. 10017
                             212-389-7819
                             markschwartz@mhschwartz.com

                             *Attorneys for Relator*

               19

5.    The "Effective Date" of this Stipulation is the date upon which it is entered by the

Court ("Effective Date").

Dated: New York, New York
       March ____, 2018

                                ERIC T. SCHNEIDERMAN
                                Attorney General of the State of New York


                                By: _____
                                Sally G. Blinken
                                Special Assistant Attorney General
                                Medicaid Fraud Control Unit
                                Civil Enforcement Division
                                120 Broadway, 13th Floor
                                New York, NY 10271
                                (212) 417-5237
                                Sally.Blinken@ag.ny.gov


Dated:    New York, NY          By: _____
          March ____, 2018
                                    *Relator*

                                By: _____
                                Philip R. Michael, Esq.
                                Michael Law Group
                                326 West 246th Street
                                Bronx, New York 10471
                                917-689-1734
                                Phil.Michael.law.group @gmail.com

                                and

                                By: _____
                                Mark H. Schwartz, Esq.
                                Law Office of Mark H. Schwartz
                                144 East 44th Street, Suite 702
                                New York, N.Y. 10017
                                212-389-7819
                                markschwartz@mhschwartz.com

                                *Attorneys for Relator*

                                19

**RELATOR**

Dated: _____, _____

_____, _____

By:      _____

[_____]

*Relator*

Dated: New York, New York

    March 6 . 2018

                          Philip R. Michael, Esq.
                          Michael Law Group
                          326 West 246th Street
                          Bronx, N.Y. 10471
                          (917) 689-1734
                          phil.michael.law.group@gmail.com

                          Mark H. Schwartz, Esq
                          Law Office of Mark H. Schwartz
                          144 East 44th Street, 8th Floor
                          New York, N.Y. 10017
                          (212) 389-7819
                          markschwartz@mhschwartz.com

By:      *Mark H. Schwartz*

                          *Attorneys for Relator*

18

SO ORDERED:

HON. ANDREW L. CARTER, JR.
UNITED STATES DISTRICT JUDGE

Dated: March 9, 2018